Thank you, Your Honor. Lauren Eskenazi-Erik with Petitioner Jeffrey Lungberg. This was a very close case. It was a credibility case, solely a credibility case. Basically... Counsel, can I ask you to speak a little closer to the microphone, perhaps? Maybe that's a little better. Thank you. Sure. Thank you, Your Honor. It was a case between the word of a young girl who accused her stepfather of molestation under a somewhat peculiar circumstance where her parents were in a very embittered custody battle. And only upon prompting from two friends at church who, in a conversation, confessed that they had been molested, did Jane Doe decide that she, too, had been molested and accused her stepfather of the same. And within what seemed like, I think, this may not be precise, but within an hour or two, the police were involved and the grandmother knew and the uncle who was the police officer knew and Petitioner had been charged with very serious crimes. So the question in the case is whether or not the prosecution's comments, improper comments during closing argument, fundamentally infected the trial, the fairness in the trial, such that reversal is required. So the focus on the credibility is really about analysing the prejudice in the trial and how close the case was. I think fundamentally in this case... Well, wait a minute, you say the close case. Fifty-seven counts of child abuse on many different occasions. Yes, Your Honor, and that all came down to whether you believe Jane Doe or believe the defendant. But isn't that a jury question? The jury was able to hear both parties testify, listen to all the evidence. Why isn't that a jury question? Well, of course it's a jury question. The issue is just whether during closing argument the improper comments made to improperly vouch for Jane Doe and to discredit the defendant at the time, whether those constitutional errors infected the trial so much so that it unfairly and improperly tainted the way the jury viewed and weighed the testimony of Jane Doe and the petitioner. What specifically was the language that you say was prosecutorial vouching? Off the top of my head, let's see. There was specifically some comments about Jane Doe's religion, where the prosecution specifically, I believe... Is that vouching? If I could get the briefs to one specific. Of course you may. I'm sorry that I don't have the quotes in my hand. Please do so. Because there are so many. Vouching normally means where the government is putting its imprimatur, its approval on a witness's testimony. And I'm looking for what it is that you suggest meets that test. Specifically, the prosecution tells the jury during closing argument, hey, this was a 13-year-old girl. She could talk about things that people have studied for years in the debate for years. And so he's expressing his personal opinion that she is extremely thoughtful. Did he say, I think she's extremely thoughtful? In that sentence, he doesn't. I mean, he says, I think it's... He says she talks about things that people have been studying for years in debate. And then later on he says, I'm telling you this little girl believed it important. Keep in mind when counsel suggests, and then he sort of stops, because the only thing he did at this point is suggest she's a liar. And then he goes on to say, Jane Doe believed it important, and moreover basically suggests that her faith in God and in religion shows that she is not a liar and that that is his personal belief. Because he's saying, I'm telling you this little girl believed it important. So verbatim there. But there are so many instances of it, and maybe those aren't the best examples. And I also think it's important to focus on the misconduct that was found by the California Court of Appeal. So there is misconduct that the Court of Appeal never identified as constitutional error. And then there's the conduct that the California Court does clearly identify as prosecutorial misconduct, but then doesn't find prejudice. Well, there you're talking about the misstating of the evidence on the note as being what the Court of Appeal found to be inappropriate. Yes, Your Honor. All right. And if we were to agree that that was the extent of the prosecutor's error during closing, how would that constitute a sufficient basis in and of itself to find prejudice to your client? Well, I think that alone is sufficient, but I think it's hard to ignore how many examples of misconduct there are, particularly also with respect to discrediting Petitioner and saying that, for example, the fact that he denies the charges somehow is not a full denial of the charges. But isn't that fair comment on the testimony? No, I think it's complete mischaracterization. I mean, he said, you know, she asked him, did you commit these charges? He said no, and then the prosecutor argues that somehow he didn't say because he didn't say I didn't do these charges, no isn't sufficient. That is a mischaracterization of the evidence because it suggests that there's some kind of legal framework that no wasn't enough, and that's a misstatement of the law and the facts. However... Now, counsel, this is an appeal from a denial of petition for habeas corpus. All of this trial took place in the state court, so we are now dealing with a double deferential standard, are we not? Well, actually, I think this is one of the most interesting questions that the case presents, which is what the legal standards are for the constitutional error versus the prejudice, and parsing those issues out, I think, is probably the most significant part of the case. And so, in all cases, you parse out constitutional error and prejudice, and what's interesting in this case is whether or not the requirement in prosecutorial misconduct cases under Donnelly, that is that the error fundamentally rendered the trial unfair, whether that's an element of improving constitutional error or whether or not that goes to prejudice. And the reason that ends up being significant is because of the double deference required under the ATPA as expressed in Harrington v. Richter, where you have the no fair-minded jurist standard, which is a very tough standard to meet. And so, whether or not that's under Harrington and under White v. Woodall, we see that that very high standard only applies to constitutional error and not to prejudice. And so, making this determination as to whether the Donnelly fundamental fairness standard goes to prejudice or goes to error, I think, is extremely important in analyzing the case. What is your best case, hopefully out of the Ninth Circuit, that supports your interpretation of the vouching issue? The vouching issue. I assume the vouching issue is the principal argument you're making here? Well, to go back to Justice Gleeson's point, also, we have a conceded error, so I think you can win on that alone, and I think you do have to look at it cumulatively. But the best cases, collectively, are Smith, Sanchez, and Witherspoon. I would say Witherspoon is the most compelling. In all of those, those were all actually drug trafficking cases, and what's so significant about them is that what they say is where there's any kind of, in those cases, Smith and Witherspoon, it's vouching. Sanchez, it's a different type of prosecutorial misconduct. But all of them very clearly say that the prosecution just made one improper comment during closing, and those cases were reversed because the case rested on the credibility of one main witness. Thank you, Counselor. Your time has expired. Thank you, Your Honors. We'll hear from the government. Thank you. Deputy Attorney General Matt Mulford, may it please the court. The district court, the magistrate judge, the state courts, they all got this one right. There is no substantial prosecutorial misconduct. The only thing that the prosecutor did wrong was to say that a note from the girl's mother to the defendant, which the mother said or asked, or excuse me for the phrase, the mother's note indicated that the defendant should not cooperate with the police and should not take a lie detector test. The prosecutor misspoke the contents of that letter in closing argument. He said that he did not, in fact, take a lie detector test and did not cooperate with the police. The next words out of the prosecutor's mouth were, you will have the evidence. And so it was a misstatement and it wasn't an attempt to deprive anyone of due process or anything else because the jurors were immediately told that they had the evidence and they were instructed that the lawyer's comments were not evidence. And that's all there is here. There's no vouching. There's no unfair comment on. Well, what about the passage that you heard opposing counsel say? I'm telling you, said the prosecutor. I was taking notes and I didn't get exactly the reference to there. Regarding the vouching, there was a, when the girl was talking about her, about why she disclosed the molestations after four years. What prompted that? So this has been going on four years. What made her disclose the molestations? She said that she had been filled with the Holy Ghost and made references to her and her parents' religious beliefs. And so the prosecutor, this is the fact of the girl's mind that triggers the reporting, and it references religion. And so obviously the religious aspect of her decision to- But would it be appropriate for the prosecutor to say, I'm telling you that her religious conviction or motive was real. Would that be appropriate for- That would absolutely not be appropriate, but that did not happen here. What about when he said, I'm telling you, the little girl believed her, quote, her faith was important. Keep that in mind when counsel suggests,  how is that not tying in credibility to faith? The prosecutor did not argue to the jurors that she should be believed because she was religious. What was the purpose of him saying, I'm telling you this? Why would it be appropriate for the prosecutor to say, I'm telling you? What's the purpose of interjecting that pronoun into it? Well, there's very little purpose, but in talking with the jurors in summation, discussing the events that everyone in the courtroom has shared, and there was a moment of, I think, uncomfortableness from the prosecutor when the girl was testifying about her very sincere, obviously sincere religious beliefs, and the prosecutor apparently laughed at her. The prosecutor laughed? Laughed at the girl about her sincere beliefs, the victim of the crimes, and I think the prosecutor no doubt felt terrible about that and needed to explain the prosecutor's response to the jury. As prosecutors, we were taught that your personal views are never to be interjected into the trial. Forget the pronouns I and we when you're doing closing argument. In this case, that rule was not followed. To no purpose, the prosecutor should not have used the word I. That's what everybody's taught and that's the way we would like to do things in an ideal world. But we're human beings and we slip. And when there is a difficult, there's an issue of the girl's religious faith. There is an issue as to why it took her four years to report molestations. Those two things, they coalesce here and needed to be considered and were appropriate and relevant and needed to be discussed. Now the pronouns used may have been imprecise and not what we would expect or hope for, but the prompting of the disclosure was caused by the religion and needed to be discussed. And without that, there's a question as to whether the girl, why now of all times? What's going on? And the answer was, I felt religiously moved to do so. And that was brought up in the argument. That's the point made by religion and it is not vouching. What's your response to opposing counsel's position that the prosecutor mischaracterized the evidence by calling into question whether or not the defendant had actually denied committing the crime? Well, the defense counsel, the prosecutor did not mistake the evidence regarding the defendant's testimony. The question defense counsel asked the defendant on the stand was a compound question that asked about three different things. Did you molest? Did you inappropriate touch? Did you speak badly to the girl? And he said, no, I didn't. Or did you make a mistake in the other way? Did you never do any of those things? Yes, I did. I never did any of those things. And it was a question that did not answer anything. And the prosecutor could appropriately say in closing argument that he had the opportunity to take the stand, exercise his constitutional right to testify, and then said nothing. In fact, said less than nothing because it was an answer that muddled together so much that no one knew what he said. That is an appropriate thing for a prosecutor to call into question. And that's the sum of the argument. There's no misstatement there at all. That's what he said when he was on the stand and the question that was asked by his lawyer. And the jurors were entitled to hear argument about how little probative value that had. Counsel, opposing counsel suggests that the testimony of this witness was crucial. Was there other evidence with respect to the acts of child molestation? Or is it entirely dependent on her? The girl gave – when she finally said to her uncle, who was a peace officer, that her stepfather had been molesting her for four years, she immediately gave a story to – or she gave an interview to a social worker. And then the details she gave to the social worker were confirmed by the search. There were specific items that the girl mentioned that he had used against her. I think it was a blueberry-tasting massage oil. And the girl said that that had been used during an instance of oral copulation, and there was indeed found a blue tube of massage oil where she said there would be. And things of that nature. So in some respects, it was a – she said that he had molested her once a week for four years, and he took the stand and said no. And in some respects, everything she said checked out when people investigated and looked at it. I think the – another piece of circumstantial evidence that doesn't go to whether the acts were committed, but the computer expert testified that when they searched Mr. Lundberg's computer, that all of the pornographic sites, the information, the pictures, had been deleted from the computer. But that the expert was – so someone had gone through, in the expert's opinion, and deleted things, because the expert could say, well, I can see where this computer accessed pornographic sites at one point in time, but there's no evidence. And so I think that is really strong circumstantial evidence of consciousness of guilt, because when Mr. Lundberg knew that the police were investigating, he went through and tried to erase some of his tracks and did so in some measure, but not entirely. So not entirely one person's word against another, because all the circumstantial evidence back up the group. Anything further? This case would be maybe hard on direct appeal, but under the EDPA standard, this isn't close. The court's got this one right. They at least got it reasonably right. Very well. Thank you, counsel. The case just argued will be submitted for decision.
judges: Gleason, O'SCANNLAIN, RAWLINSON